UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JEREMY RASMUSSEN,                                                Plaintiff,

v.                                                           Civil Action No. 3:20-cv-447-DJH-CHL

THE DUFRESNE SPENCER GROUP, LLC,                    Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Jeremy Rasmussen alleges that his former employer, Defendant The Dufresne Spencer Group, LLC (DSG), interfered with his rights under the Family and Medical Leave Act and retaliated against him for taking FMLA leave. (Docket No. 1) DSG moves for summary judgment on Rasmussen's claims. (D.N. 30) The Court heard oral argument on the motion, and the parties submitted post-hearing briefs. (D.N. 41; D.N. 42) After careful consideration, the Court will grant summary judgment for the reasons explained below.

**I.**

The following facts are undisputed. Rasmussen worked for DSG, which does business as Ashley Furniture HomeStores, from May 2017 to January 2018 and again from April 2018 until his termination on March 18, 2020. (D.N. 30-1, PageID.127; D.N. 34, PageID.396-97) He was a Senior Sales Associate for most of his employment with DSG. (D.N. 30-1, PageID.127; D.N. 34, PageID.397 n.1)

Rasmussen's wife suffers from hydrocephalus and has a shunt in her brain. (D.N. 34, PageID.398) Rasmussen sought and was approved for continuous FMLA leave from March 25, 2019, through April 9, 2019, and intermittent FMLA leave from April 10, 2019, through September 2019, for his wife's surgery to repair the shunt, which was malfunctioning. (*Id.*; D.N.

1

30-1, PageID.128-29) He also requested and was approved for FMLA leave from May 29, 2019, through June 17, 2019, for his own hernia surgery. (D.N. 30-1, PageID.129-30; D.N. 34, PageID.399) His wife's surgery was postponed several times between March 2019 and March 2020; Rasmussen requested and was granted FMLA leave for some of the rescheduled surgery dates but ultimately did not use the leave. (D.N. 30-1, PageID.131, 133-34; D.N. 34, PageID.398-99) Meanwhile, he was issued a corrective action in December 2019 for six non-FMLA absences. (D.N. 30-1, PageID.132-33; D.N. 34, PageID.397-98)

Rasmussen returned to work on March 11, 2020, following a company-sponsored trip to Jamaica and his wife's hospitalization upon their early return. (D.N. 30-1, PageID.135-36; D.N. 34, PageID.399-400) He was terminated on March 18, 2020, as part of what DSG maintains was a reduction in force (RIF) related to the COVID-19 pandemic. (D.N. 30-1, PageID.137-38) DSG points out that it retained an employee who had used more FMLA leave than Rasmussen and terminated another employee who had not used any FMLA leave. (*Id.*, PageID.138-39) Rasmussen maintains that the RIF argument is pretextual, pointing to the timing of his termination and comments by his supervisor that he had "ground to make up" as a result of his absences. (D.N. 34, PageID.406-07) He asserts claims of FMLA interference and retaliation. (D.N. 1, PageID.6-7) DSG seeks summary judgment on both claims. (D.N. 30)

## II.

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Civ. P. 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)). But if the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**A.      FMLA Interference**

> To prevail on an FMLA interference claim, a plaintiff must establish that (1) he was an eligible employee as defined under the FMLA; (2) his employer was a covered employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled.

*Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019) (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014)). DSG maintains that it never denied any of Rasmussen's leave requests (D.N. 30-1, PageID.141-42)—a point admitted by Rasmussen in his deposition. (D.N. 30-5, PageID.270-71) Rasmussen argues instead that he notified DSG Leave and Benefits Administrator Angela Mimes of his wife's condition in March 2020 and that DSG failed to "initiate[] the FMLA certification process," then terminated him. (D.N. 34, PageID.405)

"When an employer takes an employment action based on an employee's FMLA leave, the employer effectively 'denie[s] the employee a benefit to which [he] is entitled.'" *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 631-32 (6th Cir. 2018) (first alteration in original) (quoting *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007)). Thus, the Sixth Circuit allows an employee to "recover for retaliatory discharge under the FMLA's interference theory—not just under the retaliation theory." *Id.* at 631 (citing *Wysong*, 503 F.3d at 446-47).

3

In his response to DSG's summary-judgment motion, Rasmussen appeared to argue interference by retaliatory discharge, although his complaint asserts no such claim. (*See* D.N. 34, PageID.405-09 (citing *Wysong* and arguing that various factors demonstrate pretext); D.N. 1, PageID.6 ¶ 48 (alleging that DSG "interfered with, restrained, and/or denied Rasmussen's exercise of his rights under the FMLA by refusing to provide Rasmussen excused medical leave to care for his wife")) The Court sought clarification during oral argument, and in his post-hearing brief, Rasmussen purports to "confirm[]" his assertion of an interference-by-retaliation claim. (D.N. 41, PageID.586) But Sixth Circuit precedent is clear that "[a] party may not raise a new claim [or theory of recovery] for the first time in response to a motion for summary judgment." *Rafferty v. Trumbull Cnty.*, 758 F. App'x 425, 429 (6th Cir. 2018) (collecting cases); *see Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal.").

This leaves DSG's purported failure to "initiate[] the FMLA certification process" as the fifth element of Rasmussen's interference claim. (D.N. 34, PageID.405) Like interference by retaliation, however, this allegation does not appear in the complaint (*see* D.N. 1, PageID.5-6), and it thus may not properly be considered. *See Rafferty*, 758 F. App'x at 429. Because Rasmussen admits that DSG never denied any of his requests for FMLA leave (D.N. 30-5, PageID.270-71), no genuine dispute of material fact exists as to the fifth element, and summary judgment is required. *See Celotex*, 477 U.S. at 322-23; *Dyer*, 934 F.3d at 475.

**B.      FMLA Retaliation**

A prima facie case of FMLA retaliation consists of four elements:

(1) [the plaintiff] was engaged in an activity protected by the FMLA; (2) [the defendant] knew that [the plaintiff] was exercising [his] rights under the FMLA;

4

> (3) after learning of [the plaintiff's] exercise of FMLA rights, [the defendant] took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 573 (6th Cir. 2021) (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)). If Rasmussen makes this prima facie showing, "the burden of production shifts to [DSG] to show that there was 'a legitimate, nondiscriminatory reason' for the adverse action." *Id.* (quoting *Donald*, 667 F.3d at 761). And "[i]f [DSG] satisfies this burden, the burden shifts back to [Rasmussen] to show that [DSG's] stated reason was pretextual." *Id.* (citing *Donald*, 667 F.3d at 761-62).

Here, only the fourth element of the prima facie case—causal connection—is at issue. (D.N. 30-1, PageID.143-45; D.N. 34, PageID.410-11) Rasmussen argues that this element is established by the temporal proximity between his "FMLA-qualifying absences in March 2020 and his termination," as well as DSG's treatment of similarly situated employees. (D.N. 34, PageID.411; *see id.*, PageID.409) As DSG notes, however (D.N. 37, PageID.571-72), temporal proximity is measured from the time an employer learns of the employee's protected activity, and Rasmussen had requested and been granted FMLA leave repeatedly over the course of a year before his termination. *See Basch v. Knoll, Inc.*, 619 F. App'x 457, 460 (6th Cir. 2015) (rejecting temporal proximity as sole support for causation element where defendant had "repeatedly granted [plaintiff's] FMLA requests over a period of two-and-a-half years" (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008))).

As to its treatment of similarly situated employees, DSG offers a sworn affidavit by Regional Vice President of Sales Jeff Halling, who avers that "[t]he criteri[on] for selecting sales employees for the COVID-19 RIF was performance as reflected in coachings on file" and that Rasmussen and Bruce Strotman—the two employees terminated at the Jeffersontown store—

"were the only J[effersontown] [Senior Sales Associates] with coachings on file." (D.N. 30-3, PageID.157) Because Strotman had not taken FMLA leave and another employee who had taken more FMLA leave than Rasmussen was not terminated, DSG contends, Rasmussen cannot show that he was terminated in retaliation for exercising his FMLA rights. (D.N. 30-1, PageID.138-39, 146; D.N. 37, PageID.572 (citing *Smith v. City of Niles*, 505 F. App'x 482, 487-88 (6th Cir. 2012)))

Rasmussen counters with his own affidavit, in which he states that he and Strotman were not the only employees at the Jeffersontown store with corrective actions on file and that he knows DSG's assertion to the contrary to be "false and inaccurate." (D.N. 34-9, PageID.477) This "unsupported affidavit" falls short of the "specific facts" and "significant probative evidence" required to avoid summary judgment. *Am. Speedy Printing Ctrs. v. AM Mktg., Inc.*, 69 F. App'x 692, 697 (6th Cir. 2003) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986)); *see* Fed. R. Civ. P. 56(c). Moreover, Rasmussen does not dispute that an employee who had taken more FMLA leave than he had was not terminated. (*See generally* D.N. 34) Rasmussen thus has not demonstrated a genuine dispute of material fact as to the causation element, and DSG is entitled to summary judgment on the retaliation claim. *See Celotex*, 477 U.S. at 322; *Nathan*, 992 F.3d at 573.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that DSG's motion for summary judgment (D.N. 30) is **GRANTED**. A separate judgment will be entered this date.

February 28, 2023

*[signature]*

David J. Hale, Judge
United States District Court